MORRIS COAL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 12946.   Promulgated February 11, 1929.

*E. J. Brunenkant, Esq.*, for the petitioner.
*Maxwell McDowell, Esq.*, for the respondent.

324

### OPINION.

VAN FOSSAN: The issues regarding the deductions for depreciation and depletion are settled by stipulation in the manner set forth in the findings of fact. Petitioner has waived the assignment of error respecting paid-in surplus.

Prior to 1913 petitioner charged off certain capital assets and capital expenditures, which it now seeks to restore to invested capital. Obviously, many of the items written off are of a capital nature and, under proper conditions, might be included in invested capital. The mere fact, however, that capital assets and expenditures have been charged off in prior years is not sufficient to warrant the restoration of such items to invested capital in a later year. It may be that the assets have been consumed or disposed of prior to the later year. There is no evidence that the assets charged off were still in existence and were the property of petitioner during the taxable years or that the capital account at the beginning of the taxable years, as shown by the books, did not accurately reflect the true invested capital. It does not appear that the expenditures were made in connection with assets still in existence, owned and in use by the petitioner during the taxable years. There is no evidence of the amount of depreciation actually suffered in any of the years prior to 1919, nor does it appear what the capital account would have been if all capital assets had been properly included and proper deductions had been taken for depreciation. In the absence of such material facts it can not be said that the assets and expenditures written off should be restored to invested capital. Petitioner has failed to establish that the assets and expenditures charged off prior to 1913 should be restored to invested capital for the taxable years. See *Varley Duplex Magnet Co.,* 4 B. T. A. 1; and *Comstock-Castle Stove Co.,* 4 B. T. A. 114.

Petitioner claims that $60,000 should be added to invested capital as additional cost of the Cleveland Mine. The agreement of sale provided that the petitioner would pay $285,000 for the Cleveland Mine and the 500 shares of capital stock of the Morris Mining Co. This was the total amount to be paid to the vendors for both the mine and the stock, and was to be paid by petitioner. No segregation of the total consideration of $285,000 to the two classes of property, stock and mine, is made in the agreement, nor does it appear why the petitioner should pay for stock to be sold and conveyed to Morris. In the light of the minutes of the stockholders' meeting relating to the acquisition by petitioner of the assets of the Morris Mining Co., however, it appears that petitioner paid $60,000, or the equivalent, for the stock on behalf of Morris, charging his account therewith, and that later, upon transfer of the assets of the Morris Mining Co. to it, the liability was canceled. The record of these transactions made by petitioner upon its books of account in March, 1907, is the most reliable evidence we have of the amount paid for the Cleveland Mine. The Black Top Mine was entered upon the books in the amount of $120,000 and the Cleveland Mine in the amount of $225,000. Against these asset charges there was credited $60,000 on account of Morris Mining Company stock, $99,000 on account of bond issue and $186,000 on account of bills payable. In the light of these facts, it seems clear that the total cost of the Cleveland Mine to petitioner was only $225,000, and accordingly we hold that respondent did not err in refusing to include in invested capital $60,000 as additional cost of the mine.

Petitioner claims that there were abnormal conditions affecting its capital and income for 1920 and that its profits tax should be assessed under sections 327 and 328 of the Revenue Act of 1918. Practically the only evidence offered in support of this claim was the amount of the salaries paid to officers of the company, which were claimed to have been inadequate. The salaries paid by the petitioner to its officers aggregated $7,633.50, and a like amount was paid as salaries to these officers by the Morris-Poston Coal Co., to which they devoted a part of their time. The relation, if any, between the latter company and petitioner does not appear. For purposes of comparison, evidence was also introduced of the gross sales, invested capital, net income, profits tax and officers' salaries of one other coal company operating the same vein of coal on property adjacent to petitioner, but it was not established that such company was typical or was operating under normal conditions or that its capital, income and officers' salaries were normal. No evidence was offered of petitioner's gross sales or of its invested capital, taxable income and excess-profits tax, as determined by respondent. There is no evidence in this record of abnormal conditions affecting petitioner's

capital or income which entitle it to special assessment of its profits tax. Accordingly, we hold that respondent did not err in refusing to assess petitioner's profits tax under sections 327 and 328 of the Revenue Act of 1918.

*Judgment will be entered under Rule 50.*